**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.) KATHERINE KNAPP ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CALIBRE SYSTEMS, INC., AND) DOES 1 THROUGH 10, inclusive ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. CV 10-4466 ODW (JCGx) <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [22] |

## I.   INTRODUCTION

Currently before the Court is Defendant Calibre Systems, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Katherine Knapp's ("Plaintiff" or "Relator") first, second, third and sixth claims of the First Amended Complaint ("FAC"). (Dkt. No. 22.)  After careful consideration, the Court deems the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the following reasons, the Court **GRANTS** Defendant's motion as to the second and sixth claim, and **DENIES** Defendant's motion as to the first and third claims.

1

## II.  FACTUAL BACKGROUND

Plaintiff's FAC alleges the following:

Defendant was a contractor for the Government during all relevant times of this action.  (FAC ¶ 11.)  Specifically, Defendant provided environmental and archaeological services at the Ft. Irwin National Training center.  (FAC  ¶ 11.)  Plaintiff was an employee for Defendant and worked at the Ft. Irwin site as an Analyst member of the Environment Program Management Directorate.  (FAC ¶ 14.)

The contract between the Government and Defendant required Defendant to follow the regulations set forth by § 106 of the National Historic Preservation Act of 1996, 16 U.S.C. § 470f ("§ 106").[1]  (FAC ¶ 11.)  One of Plaintiff's job responsibilities included ensuring Defendant complied with § 106 by identifying and evaluating archeological sites to include in the National Registry.  (FAC ¶ 14.)

During the course of Plaintiff's employment, she learned that Defendant regularly ignored § 106 regulations in an attempt to secure future contracts with the Government. (FAC ¶¶ 15, 17.)  In particular, Plaintiff's supervisor, Luz Ramirez de Bryson ("de Bryson"), commonly disregarded § 106.  (FAC ¶¶ 16-19.)

In March 2009, Plaintiff expressed her concerns regarding Defendant's § 106 violations to two Government agencies.  (FAC ¶¶ 20-21.)  First, Plaintiff wrote a letter on March 3, 2009 to Katherine Kerr at the Advisory Council on Historic Preservation. (FAC ¶ 20.)  Second, Plaintiff met with Clarence Everly, Ft. Irwin's Natural and Cultural Resource Manager, on March 18, 2009.  (FAC ¶ 21.)

On March 18, 2009, de Bryson told Plaintiff not to report to work because of contractual issues between Defendant and the Government.  (FAC ¶ 22.)  Plaintiff was then informed she would have to re-apply for her job, but that she would almost surely get it back.  (FAC ¶ 24.)  Despite Defendant's assurances, Plaintiff did not get her job back and was officially terminated on May 15, 2009.  (FAC ¶ 31.)

[1] §106 mandates that "any . . . independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds . . . take into account the effect of the undertaking on any district, site, building, structure, or object that is included or eligible for inclusion in the National Register."

2

1      Thereafter, Plaintiff instituted this action on June 17, 2010.  (Dkt. No. 1.)  The

2  United States declined to intervene in the action, and the case continued with Plaintiff as

3  a Relator.  (Dkt. No. 10.)  On June 22, 2011, Defendant filed a motion to dismiss

4  Plaintiff's sixth claim of the Complaint, (Dkt. No. 13), to which the Court granted with

5  leave to amend on July 25, 2011.  (Dkt. No. 20.)  Plaintiff subsequently filed her FAC on

6  August 8, 2011 alleging: (1)violation of the Federal False Claims Act ("FCA"), 31 U.S.C.

7  § 3729; (2) violation of the anti-retaliation provision of the FCA, 31 U.S.C. § 3730(h);

8  (3) wrongful termination in violation of public policy; (4) violation of California Labor

9  Code §§ 98.6 and 1102.5; (5) intentional infliction of emotional distress and (6) negligent

10  infliction of emotional distress.  (Dkt. No. 21.)

11  **III.    LEGAL STANDARD**

12      "To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a

13  complaint generally must satisfy only the minimal notice pleading requirements of Rule

14  8(a)(2)."  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir.2003).  Rule 8(a)(2) requires "a

15  short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

16  R. Civ. P. 8(a)(2).  For a complaint to sufficiently state a claim, its "[f]actual allegations

17  must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp.*

18  *v. Twombley*, 550 U.S. 554, 555 (2007).  Mere "labels and conclusions" or a "formulaic

19  recitation of the elements of a cause of action will not do."  *Id.*  Rather, to overcome a

20  12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to

21  state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

22  1949 (2009) (internal quotation and citation omitted).  "The plausibility standard is not

23  akin to a probability requirement, but it asks for more than a sheer possibility that a

24  defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent

25  with a defendant's liability, it stops short of the line between possibility and plausibility

26  of entitlement of relief."  *Id.*  (internal quotation and citation omitted).

27      When considering a 12(b)(6) motion, a court is generally limited to considering

28  materials within the pleadings and must construe "[a]ll factual allegations set forth in the

1  complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *See Lee v.*

2  *City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001) (citing *Epstein v. Washington Energy Co.*,

3  83 F.3d 1136, 1140 (9th Cir. 1996)).  A court is not, however, "required to accept as true

4  allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

5  inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

6  Thus, the Ninth Circuit has summarized the governing standard, in light of *Twombly* and

7  *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-

8  conclusory factual content, and reasonable inferences from that content, must be

9  plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*,

10  572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

11  **IV.   DISCUSSION**

12      Defendant moves to dismiss four claims: (1) Plaintiff's first claim for violation of

13  the FCA; (2) Plaintiff's second claim for violation of the FCA anti-retaliation provision;

14  (3) Plaintiff's third claim for wrongful termination in violation of public policy; and (4)

15  Plaintiff's sixth claim for negligent infliction of emotional distress.  The Court addresses

16  each in turn.

17      **A.   PLAINTIFF'S FIRST CLAIM PURSUANT TO THE FCA**

18      Defendant moves to dismiss Plaintiff's FCA claim arguing that Plaintiff fails to

19  plead that Defendant knowingly submitted a false claim for payment and that the alleged

20  false claim was material to the agreement between the Government and Defendant.  (Mot.

21  at 5-7.)  Plaintiff disagrees contending the FCA claims under false certification and

22  worthless services are sufficiently pled. (Opp'n at 6-10.) The essential elements of FCA[2]

23

---

24    [2]   The FCA provides for liability for any person who, among other things, "knowingly presents
25  . . . a false or fraudulent claim for payment" to the United States government; "knowingly makes [or]
    uses . . . a false record or statement" to obtain payment of a false or fraudulent claim by the government
26  . . . ." 31 U.S.C. § 3729(a).  Although the FCA requires the Attorney General to investigate violations,
    *id.* § 3730(a), a civil action under the FCA may be brought either by the United States or, as here, a *qui*
27  *tam* action by a relator in a private action.  *Id.* § 3730(a), (b).

28      In the typical *qui tam* FCA action, such as where a private company overcharges the United
    States under a government contract, the claim for payment is literally false or fraudulent. *U. S. ex rel.*
    *Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). Congress, however, has emphasized that the FCA
    should be broadly construed "to reach all types of fraud . . . that might result in financial loss to the
    [g]overnment." *U.S. v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). Thus, courts have ruled that the

4

1  liability are (1) a false statement (or fraudulent course of conduct), (2) made with

2  scienter, (3) that was material, causing (4) the government to pay out money or forfeit

3  moneys due. *Hendow*, 461 F.3d at 1174. Because it is an anti-fraud statute, an action

4  brought under the FCA must satisfy the particularity requirements of Federal Rule of

5  Civil Procedure 9(b) ("Rule 9(b)"). *Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th Cir.

6  2001). To comply with Rule 9(b), allegations of fraud must be "specific enough to give

7  defendants notice of the particular misconduct which is alleged to constitute the fraud

8  charged so that they can defend against the charge and not just deny that they have done

9  anything wrong." *Id*. at 1019 (citation omitted). Nevertheless, a plaintiff/relator is not

10 required to identify representative false claims to support every allegation; rather, the

11 Ninth Circuit has concluded that "it is sufficient to allege 'particular' details of a scheme

12 to submit false claims paired with reliable indicia that lead to a strong inference that

13 claims were actually submitted." *U.S. ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 998-99

14 (9th Cir. 2010).

15       In this case, Plaintiff sufficiently pleads an FCA claim. To begin, Defendant

16 argues that Plaintiff has not alleged specific facts that Defendant knowingly submitted

17 a false claim for payment to the Government with specific intent to deceive. (Mot. at 5.)

18 The FCA, however, does not require such a high threshold. Specifically, its "knowingly"

19 scienter requirement does not require "proof of specific intent to defraud." 31 U.S.C. §

20 3729(b)(1)(B). Rather, a person acts "knowingly" with respect to information if he has

21 actual knowledge of the information, or he acts in deliberate ignorance of, or in reckless

22 disregard of, the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A).

23       Applying this definition, the scienter requirement is sufficiently pled. Plaintiff

24 alleges that § 106 required Defendant to have a valid Programmatic Agreement ("PA")

25 to conduct excavations at Ft. Irwin. (FAC ¶¶ 18-19.) In addition, the allegations provide

26 that de Bryson assured Defendant's employees, including Plaintiff, that Defendant had

27

28 FCA does not limit liability to facially false or fraudulent claims for payment. Rather, the "broad
   construction of a 'false or fraudulent claim' [has] given rise to two doctrines that attach potential [FCA]
   liability to claims for payment that are not explicitly and/or independently false: (1) false certification
   (either express or implied); and (2) promissory fraud." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461
   F.3d 1166, 1171 (9th Cir. 2006).

5

1  a valid PA to conduct three specific excavations in June, 2008.  (FAC ¶ 19.)  Plaintiff,

2  however, asserts that Defendant did not secure a valid PA for these excavations, and

3  therefore, should not have begun the excavations.  (FAC ¶ 19.)  Further, Plaintiff alleges

4  Defendant was motivated to ignore § 106 because it was trying to complete jobs in a

5  timely manner to secure future business with the Government. (FAC ¶ 17.)  Accordingly,

6  the Court finds that the allegations state, at a minimum, that de Bryson acted in deliberate

7  ignorance of, or reckless disregard of, the falsity regarding the existence of a valid PA.

8  Thus, the scienter requirement is sufficiently pled.

9          Next, Plaintiff sufficiently pleads the materiality element of her FCA claim.

10  Defendant argues that Plaintiff fails to allege that the purported false claim Defendant

11  submitted to the Government was a prerequisite to obtaining a government benefit.  (Mot.

12  at 7.)  Plaintiff, however, specifically alleges: "[Defendant]'s contract expressly

13  stated that it was to follow the regulations set forth by Section 106 and 110 of the

14  National Historic Preservation Act of 1996 . . . ." (FAC ¶ 11.)  Thus, Plaintiff effectively

15  alleges that compliance with federal regulations was a "prerequisite to obtaining a

16  government benefit" and a "*sine qua non* of receipt of [government] funding."  *Hendow*,

17  461 F.3d  at 1171-72.  In other words, complying with these regulations was material

18  because it is plausible that failure to comply with these  federal regulations would have

19  had  the natural tendency to influence, or was capable of influencing, the decision of the

20  Government to pay Defendant.  *See U.S. v. Bourseau*, 531 F.3d 1159, 1171 (9th Cir.

21  2008) (citation omitted) ("The Supreme Court has stated that [i]n general, a false

22  statement is material if it has a natural tendency to influence, or [is] capable of

23  influencing, the decision of the decisionmaking body to which it was addressed.")

24  (citation and quotation omitted).  Thus, the materiality requirement is sufficiently pled.

25  Accordingly, the Court **DENIES** Defendant's Motion as to Plaintiff's FCA claim.[3]

26

27

28          [3] Defendant moves to dismiss Plaintiff's third claim for wrongful termination in violation of
public policy arguing that this claim fails for the same reasons Plaintiff's FCA claim fails. (Mot. at 10.)
The Court's holding that Plaintiff's FCA claim survives renders Defendant's contention baseless.
Accordingly, the Court **DENIES** Defendant's Motion as to Plaintiff's third claim.

**B.    PLAINTIFF'S SECOND CLAIM PURSUANT TO THE FCA'S ANTI-RETALIATION PROVISIONS**

Defendant contends, *inter alia*, that Plaintiff fails to allege that Defendant knew she was investigating its allegedly fraudulent conduct. (Mot. at 9.) The Court agrees. For Plaintiff to succeed on her FCA retaliation claim, she must show: (1) the employee must have been engaging in conduct protected under the Act; (2) the employer must have known that the employee was engaging in such conduct; and (3) the employer must have discriminated against the employee because of her protected conduct." *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1060 (9th Cir. 2011) (citing *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996)).  Rule 9(b)'s particularity requirement does not apply to an FCA retaliation claim.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Here, Plaintiff fails to allege that Defendant knew Plaintiff was engaging in conduct protected under the FCA.  Specifically, Plaintiff alleges that she reported Defendant's conduct to Katherine Kerr at the ACHP and Clarence Everly at Ft. Irwin's National Cultural Resources. (FAC ¶ 36.)  Plaintiff, however, does not allege that she notified Defendant directly nor does she allege that informing Katherine Kerr and Clarence Everly of Defendant's conduct caused Defendant to be notified of Plaintiff's protected activity.  While Plaintiff argues in her papers that  Defendant was, indeed, directly notified of Plaintiff's concerns in April of 2009, (Opp'n at 15), the Court shall not consider Plaintiff's contention because this "new" allegation is present only in her opposition papers.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers  . . . .") (citations omitted); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994) (finding that for purposes of a motion to dismiss, the court's review is limited to the contents of the complaint).  Accordingly, Plaintiff fails to state an FCA retaliation claim, and the Court **GRANTS** Defendant's Motion as to this claim.

### C.     PLAINTIFF'S SIXTH CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

On July 25, 2011, the Court dismissed Plaintiff's NIED claim finding that Plaintiff's claim is based solely on Defendant's alleged retaliatory termination of her employment. (July 25, 2011 Order, Dkt. No. 20, at 2.) As a result, the Court held that such inherently intentional conduct cannot support a claim of negligence. (*Id.*) In amending her allegations, Plaintiff now argues that Defendant's course of conduct leading up to Plaintiff's termination was "arguably negligent." (Opp'n at 18.) Specifically, Defendant contends that upon being asked not to come to work, "[f]or two months, [Plaintiff] was strung along by [Defendant] and her supervisors, where she was led to believe that it was just a matter of getting the right approvals and signatures" to rehire her. (Opp'n at 19.) The Court, however, finds that Defendant's decision to inform Plaintiff that she no longer report to work and Defendant's ultimate decision not to rehire Plaintiff were employment decisions that are, indeed, inherently intentional. *See Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160 (1987) (Under California law, "[a]n employer's supervisory conduct is inherently *intentional* . . . . [E]very employer must on occasion review, criticize, demote, transfer and discipline employees. Employers are necessarily aware that their employees will feel distressed by adverse personnel decision.") (emphasis added) (internal quotations and citations omitted). Such employment decisions cannot be the basis of a claim for NIED. *Semore v. Pool*, 217 Cal. App. 3d 1087, 1105 (Ct. App. 1990) ( "[W]here the conduct is intentional, it cannot be used as the basis for a negligent infliction of emotional distress claim.").

This case is inapposite to *Miller* on which Plaintiff relies for support. In *Miller*, the court expressly held "evidence that [Employer] intentionally retaliated against [Employee] would preclude an assertion that this same intentional action constituted negligence." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). Nevertheless, plaintiffs in that case were allowed to go forward with their NIED claims because two months prior to their termination the parties entered into settlement agreements resolving charges filed with the Equal Employment Opportunity Commission

1  ("EEOC"). *Id.* at 730. The court found that the "[employer's] act of negotiating

2  settlement agreements and then laying them off prior to their enjoyment of benefits

3  implied under the contract was arguably negligent, and could reasonably give rise to

4  emotional distress." *Id.* at 738.

5        No such facts exist in this case because Defendant's alleged conduct relates solely

6  to its employment decision not to rehire Plaintiff. Specifically, Plaintiff alleges in March

7  of 2009 she was informed "not to come to work because of 'contract issues.'" (FAC ¶

8  22.) Plaintiff was further informed that Defendant was in the process of resolving this

9  "contract issue" with the Army. (FAC ¶ 23.) Plaintiff was then asked to reapply for her

10  position, and ultimately, Defendant did not rehire Plaintiff. (FAC ¶¶ 24-30.) While

11  Defendant may have "strung Plaintiff along," employers are necessarily aware that their

12  employees will feel distressed by adverse personnel decision. *See Cole*, 43 Cal. 3d at

13  160. Consequently, Defendant's adverse personnel decision to inform Plaintiff not to

14  come to work and its decision not to rehire Plaintiff were necessarily intentional, not

15  negligent.[4] Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's NIED

16  claim.

17  **IV.   CONCLUSION**

18        Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART**

19  Defendant's Motion to Dismiss. Specifically, the Court denies Defendant's Motion as

20  to Plaintiff's first and third claims pursuant to the FCA. In addition, the Court grants

21  Defendant's Motion as to Plaintiff's FCA retaliation claim with leave to amend. Further,

22  the Court grants Defendant's Motion as to Plaintiff's sixth claim without leave to amend.

23

24        [4]   Plaintiff also cites to *Pritchford v. Hematronix, Inc.*, No. C-95-105 MHP, 1995 WL 219089

25  (N.D. Cal. Apr. 4, 1995) to support her contention. In *Pritchford*, the court allowed an NIED claim to proceed based on claims for discrimination and sexual harassment. *Id.* at *6. No such allegations are

26  present in this case. Plaintiff further cites three California cases as authority in her Opposition to support her amended NIED claim, but these cases do nothing to contradict this Court's holding. The

27  first and third cases Plaintiff cites, *Gantt v. Sentry, Inc*., 1 Cal. 4th 1083 (1992), and *Livitsanos v. Superior Court of Los Angeles Cnty*., 2 Cal. 4th 744 (1992), discuss intentional infliction of emotional

28  distress, not NIED. Therefore, these cases provide no guidance to Plaintiff's NIED claim. The second case Plaintiff cites, *Phillips v. Gemini*, 63 Cal. App. 4th 563 (Ct. App. 1998), merely holds that emotional distress damages, including NIED, are not barred by the exclusivity of California workers' compensation laws when a plaintiff sues his employer. This case is similarly not applicable when considering Plaintiff's NIED claim.

1  Accordingly, Plaintiff's NIED claim is dismissed with prejudice, and Plaintiff may amend

2  her FAC within fourteen (14) days of this Order, if she can in good faith, allege facts that

3  support her FCA retaliation claim.

4          IT IS SO ORDERED.

5

6          October 17, 2011

7

8                                          _____

9                                          HON. OTIS D. WRIGHT, II
                                           UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28